Good morning. May it please the Court. Jasper Ward from Jones Ward in Louisville, Kentucky on behalf of the plaintiffs and appellants in this case. I'd like to reserve three minutes, if that's okay, for follow-up. Thank you very much, Your Honor. We represent teenagers and their parents who used a form of Bitcoin, essentially a virtual item, to illegally gamble online. Both the teenagers and their parents had independent claims against an American company, Valve, that created this virtual item, hosted the accounts of the illegal online gambling websites, and as the arbitrators in this case found, knew about and turned a blind eye to illegal gambling going on on their servers using their accounts. We asked the District Court originally to decline to send this case to arbitration based on a clear exception in the Arbitration Clause, which said that any claims relating to or arising from any unauthorized use were accepted from the Arbitration Clause, which was in Section 11 of the Subscriber Agreement. So the District Court thought that the arbitrator should decide whether the Unauthorized Use Clause exception applied. Why was that wrong? Well, I don't know that that issue actually was really before the District Court. This wasn't an original arbitrability or delegation issue that was not really presented until this process here. The District Court decided that the Unauthorized Use was required to be by the plaintiffs only, which we think was incorrect, and then found that plaintiffs had not alleged that it was their Unauthorized Use that triggered the exception. We think that was factually incorrect, and we cited in our brief numerous times the arguments we made showing that the plaintiff's use was unauthorized. When I say plaintiffs, the teenage plaintiffs. The moms of these two boys filed claims on their son's behalf as well as individually because it was their money that was used and lost. That's the second error that we think the District Court made was sending those claims by the parents to arbitration because they were not signatories and they did not benefit from the contract, which is the key factor in the cases sending non-signatories to arbitration. The District Court thought that the parents were bound by equitable estoppel. Isn't that right? We think that's incorrect because they did not benefit at all from the contract. They did not use the services themselves. They were not in any way, shape, or form beneficiaries of or people who would be estopped from claiming that the contract didn't apply to them. But they could have benefited from it, right? If it was their money that was being used, I guess this could have turned into a profit generating thing by the teenagers if they'd done it intelligently. I don't know. Well, I think that's one of the issues in this case, Your Honor, is that there's the teenagers gambling illegally with third-party sites from across the world were ripe for fraud and abuse, and that's what happened here. This wasn't a case where the teenagers... Right. But they could have benefited from it. Right? I don't think that... Or not. Nobody benefited... This was everybody who gambled lost here. The two plaintiffs who we represent lost. No, I understand that. Sure. But I'm just saying if... I'm wondering if the equitable estoppel argument can be supported because even though these two plaintiffs lost, others could have benefited. And if there's others who benefited, the parents, in effect, would have benefited. And so does that then mean that they are beneficiaries or potential beneficiaries that could have supported the equitable estoppel claim? I can speak for my clients, and I can speak for myself as a parent, and I don't think I would ever benefit from my children illegally gambling online even if they won. I think the point of this is that illegal online gambling hurts teenagers, hurts families. And our clients, specifically our parents, both of them lost. How about that Washington Supreme Court case, I think it was Townsend, which was very odd in that the dissent had more votes than the majority. But that's indicated, depending on whether you agree with the majority or the larger dissent about whether parents and children suing on a purchase agreement would be bound even though the children were not parties to the purchase agreement. I agree that it's odd the way that that was framed in that opinion. I think that under Townsend, I think it's clear that the estoppel argument would apply if the parents or if the non-signatory actually benefited, and I don't think that's what we have here. I think both, in fact, our plaintiffs did not benefit. And in general, the idea that parents could benefit from their children engaged in illegal I don't think that that's under Townsend. But the teens were bound, correct? I'm sorry? The teens were bound. They signed the contracts, correct? I think that that, while that's unfortunate, I do think unfortunately that is the law, that the 13 to 17-year-old children who signed a contract would be bound by it even if it was for illegal activity. But I do think that the exception applies, and I think that's where the claims for the plaintiffs individually, the teenage plaintiffs individually, do not belong in arbitration was because the exception applied. So the arbitrator thought that the unauthorized use exception didn't apply, and the district court confirmed the arbitral award. And so we review that under a very deferential standard, the Section 10 standard. So why is that totally, we'd have to say it was totally irrational or manifest disregard of law or something along those lines. Sure. And I have two responses to that. First, I think the original April 2017 order finding that the unauthorized use exception didn't apply should be reviewed de novo, and I don't think that that was correct. And once the court makes the determination that was incorrect, we never have the arbitrator deciding it. Second, even under the- And so you think it's reviewed de novo because you think the arbitrator didn't have the authority to address that gateway issue? I think we can look at both decisions independently, and I think you can review them independently under the separate standards. I don't think that the original district court's order gets cloaked in a Section 10 standard because an arbitrator later decided on different grounds that that was the case. But I do think even under the Section 10 standard, I understand it's very narrow, but the cases that we cited in the Ninth Circuit all have something in common, which is that cases where an arbitrator award sanctions illegal conduct or conduct that violates a statute, those are the kind of decisions that are manifest disregard of the law. The arbitrator here- So there was an allegation, was there an allegation that Valve was involved in illegal conduct? I thought the argument or the claim was that Valve had not stopped other third parties from engaging in illegal conduct with its virtual items. The claim was that Valve knew about, which the arbitrator agreed, and did not stop and continues to this day. If you go out today, if there's internet available to you, you can skins gamble online today. Teenagers can do that illegally today. Valve knows that that's going on, and the arbitrators found that they turned a blind eye to it, they had unclean hands, that they didn't stop it for a long time, even though they knew it was going on. But it's illegal only as to the teenagers, not generally, or it's illegal for anyone, even adults, to do it. It's illegal for adults to do it. It's illegal to host gambling activities under Washington law. It's the bar with the roulette wheel in the back room. The servers are the bar, and the accounts of these third-party gambling sites are on Valve servers. These are Valve accounts that these third parties create to engage in their gambling. The bar owner cannot say, well, the illegal gambling is going on by a third party. I guess, getting back to the original section 10 point, the reason that arbitrators are afforded that differential standard is because we want to efficiently adjudicate these disputes, but the standard, the way I view it is, would a judge ever do this? Would a judge ever say, I know this bar has been proven to know that there is illegal activity, has been proven to allow teenagers to enter into a back room to gamble on roulette, on craps, on poker, and I'm going to let it keep going because the teenagers should have known better? I think that's the section 10 standard. A judge would never do that, and I think the arbitrator is ignoring the law and ignoring that both Washington law from a public policy standpoint and from an illegal gaming standpoint and from a protection of teenagers standpoint should not allow this activity. I think that that's where the arbitrator ignored the law. So, I think originally the district court erred on the unauthorized use exception and the arbitrator, even if you look at the section 10 standard, I think their disregard of the law and disregard of once we proved that it was illegal gambling, that Valve knew about it and Valve didn't stop it, and to this day hasn't stopped it. I think that that was sufficient, and to say that we didn't prove our case, I don't know what else we need to prove when teenagers are illegally gambling online. Do you want to save the rest of your time? Unless there's any more questions, I'm happy to. Thank you. May it please the court, Gavin Skok on behalf of defendant Apelli Valve Corporation. We spent roughly two years litigating these cases on the merits in front of two different arbitrators, and in that time, the plaintiffs twice asked each arbitrator to rule on arbitrability. They also submitted all of their claims on the merits after full evidentiary hearings. The arbitrators ruled on arbitrability twice. The arbitrators ruled on the merits, and then their awards were both confirmed by the district court. Our position on this appeal is simple. When an arbitrator has authority to decide an issue and does decide that issue, that decision is subject to review under the very differential standard of FAA section 10. Okay, so that gets us to the front-end question, which is should this have been sent to arbitration in the first place? Based on what you're saying, are you suggesting the plaintiffs waived that argument because once they got sent to arbitration, they just followed through on the process? What I'm suggesting is that this court should do here the same thing it did in the power agent versus electronic data systems case at 358 Fed 3rd 1187. That was a situation almost identical to this procedurally, where the issue of arbitrability was presented to the district court. A case was filed in district court. Defendants moved to compel arbitration. District court made findings that the claims were arbitrable, sent the case to arbitration. Plaintiffs didn't like that, and the first thing they did in arbitration in power agent was they challenged arbitrability. Arbitrator ruled against them. Arbitrator then ruled against the plaintiffs on the merits. District court confirmed the award, and it came up to the Ninth Circuit on appeal. The court said in that situation, the conduct of the plaintiffs submitting the arbitrability issue to the arbitrators, taking that second bite at the apple, means that when we're on appeal, you use the FAA Section 10 standard. You don't go back to the original decision and look at that de novo. That makes sense because you don't want to have a situation where you essentially throw away two years' worth of work with multiple arbitrators. Power agent wasn't some aberration. It actually built on an earlier case out of this circuit as well, the TriStar Pictures versus Directors Guild of America case. It's discussed in the power agent opinion, but that's a Judge Kaczynski opinion at 160. If plaintiffs had not asked the arbitrator to rule on arbitrability, wouldn't you then be arguing, well, they never brought this issue up before the arbitrator, so we still lost two years. I mean, I guess I don't understand. What were they supposed to do, just do an interlocutory appeal as soon as it was referred to arbitration? Yes. The plaintiffs had two different options they could have pursued right away, a 28 U.S.C. 1292B interlocutory appeal. They also could have sought a writ of mandamus. The other option, though, is they could have, had the case ended up in arbitration, they could have done what Judge Kaczynski in that TriStar Pictures case said a party could do, which is simply object to the arbitrator's jurisdiction throughout. And in TriStar Pictures, you had a party, TriStar, that instead chose to argue arbitrability to the arbitrator and present the merits of their defense to the arbitrator. And this court said, when you do that, instead of just objecting to the arbitrator's jurisdiction, you essentially consent. They called it tacit consent in TriStar. And when you say object, I want to make sure I understand, when you say object to the arbitrator's jurisdiction, you're just saying, look, you don't have jurisdiction, we're not going to come in and defend ourselves. So that gives you an award, and then they have to take the risk without trying to, if they lose on appeal, then they've just waived any substantive defense. Well, but that's why you have the 1292B interlocutory option or the writ option. That's really the way you would go. And the scenario I outlined is very similar to what the Supreme Court thought of in the first Options v. Kaplan case, where in that situation, you had a party that felt it wasn't subject to the arbitrator's jurisdiction. They essentially refused to participate other than to file an objection to that jurisdiction. So there's... Hasn't the Supreme Court subsequently ruled that just arguing about arbitrability doesn't mean you're accepting the arbitrator's right to arbitrate? I think our case law has been somewhat superseded by Shine, and even in LAMPS Plus, there's language to that effect. So I'm not sure that law you're citing is still enforced. I do think first options is good on the facts, but the way to look at it is there are really two routes here that we have to a delegation of arbitrability to the arbitrator. They're two independent ones. One is the conduct, and that's what we see from Power Agent. That's what we see from TriStar. That is still good law that says the conduct in affirmatively telling the arbitrators they have authority to resolve the issue and asking them to. That conduct by itself is an agreement, and that makes sense. The other route, though, that's independent is the one that the court spent a lot of time talking about in the last case, which is the delegation through incorporation of the Triple A rules. So here the Triple A rules were incorporated by reference, but there's an argument about whether they're applicable to unsophisticated parties such as the teens. Do you want to address that? Sure. I'd start with saying, though, the court doesn't need to reach that issue because it can get to the delegation through the conduct. But with respect to whether it's applicable to the teens or not, what we have from this circuit is the Oracle America case and the Brennan v. Opus Bank case. Both of those held the delegation was, I'm sorry, the incorporation of the Triple A rules was a delegation. Now, I recognize both of those did involve sophisticated parties. We held open the unsophisticated parties issue. Does that make a difference? No, I don't think it does because in Brennan, the court actually said, quote, our holding today should not be interpreted to require that the contracting parties be sophisticated. And there is a weight of case law within this circuit and within others that apply the same rule to consumer contracts as well as to business-to-business contracts. I don't think the court needs to reach that issue, though, because we have the repeated submission to the arbitrator of the arbitrability issue by plaintiffs, which does have a separate and independent legal basis for consent. Let me answer the question relative to the Townsend case. Let's put aside the issues of waiver for a moment. The judge in this case held that the parents who are suing were equitably stopped from pursuing their claims outside of the arbitration process. And he relied upon, or at least the Townsend case. Do you think the Townsend case supports the judge's decision relative to equitable stopper in this case? The judge here found equitable stopper applied to the parents. In Townsend, you can read the case as saying that the majority of the court on the issue of equitable stopper said that the children in that case who were not signatories to the contract were not bound by the arbitration agreement. So discuss that a little bit. I'll take it in two parts. And the first part, though, is to go back to FAA Section 10. I think if the standard of review is FAA Section 10, then we don't need to unpack whether the arbitrators got it right. On the non-signatory parents, keep in mind the plaintiff submitted claims to the arbitrator on behalf of both parents and children. They presented testimony about the parents. They had a parent testify on the merits. They asked the arbitrators to rule on all the claims. Let's assume that we don't agree that the parents are bound merely because they participated in the arbitration. So could you address Judge Oliver's question, because I'm interested in that as well. Yeah. So with Townsend, there were three factors the Washington State Supreme Court focused on in holding that non-signatories were bound. The first one was they looked at the complaint. They said all of the allegations here phrased in the plural plaintiffs, and they grouped the parents and the children in there. We have the same thing here. The complaint has just group allegations for the plaintiffs and the kids. Same factor. The second thing the court in Townsend looked at was the claim that— Can I ask on that, though? I mean, I guess I'd have to go back. I didn't catch that when I reviewed the complaint. I think because I viewed distinct actions by the two separate groups, meaning it seems to be breach of contract effectively by the children, but the parents—I mean, I know Equitable Stop was trying to bring them into that, but their claims seem to sound more in tort. So I'm not sure that I agree that the plaintiffs are grouped similarly in the complaint, if that's one of the factors. So the way the Townsend court approached it was to look at simply the text. Do they separate out allegations between the plaintiff's parents and the plaintiff's children in that case? And I think the key here is to go back to a finding Judge Kunauer made when he originally compelled arbitration, a finding that's not being challenged, which is that there is no duty separately pled to the parents in the complaint. What there is is there's pled a harm. The allegations in the complaint, the only thing that it says, it's paragraphs 89 through 91 in the complaint, those are the only references we have talking about anything to do with the parents, and it simply says the parents gave their children some money and the kids lost that money. That's a harm, but there's no duty pled. And so Judge Kunauer, when he compelled arbitration— That puts them in a different bucket. They just provided money. It does seem to clarify that the claims are based on different rationales between the parents and the children. They may be, but they're not pled that way, and in Townsend that was significant. The other two factors in Townsend that mattered a lot were the claims that were pled. All eight of the claims in Townsend were pled on behalf of both parents and kids. It's the same here. All six were pled. And the key factor, one of the key factors, a third one, in Townsend was that a couple of those claims directly related to the contract, and we have that same factor here. Count six in the complaint asks the court to make a series of declaratory judgments on the contract, that it's illusory, that the arbitration provision is not enforceable, that certain damages limitations are not enforceable. That relief is requested on behalf of all plaintiffs, so you do have the parent plaintiffs who are asking the court to make judgments about the contract. Are they trying to enforce the contract? Because that was the situation in Townsend, as I understand, trying to get benefits from enforcement of the contract. In this case, I thought that the plaintiffs were saying the contract isn't binding and their claims were based on statutory and tort claims. Well, they're saying two things. They're trying to avoid the arbitration provision in the contract, and to that extent they're saying it's not binding. But the other thing that's throughout the briefing is the idea that Valve has a duty to enforce its contract against some third parties on the internet to protect the plaintiffs. That's really inherent to all of their claims, and keep in mind the contract we're talking about is a license. It's a license. It's permission to use Valve software, and so it's at the core of all of these allegations that Valve is somehow allowing people to use its software wrong and in a harmful way. So you certainly have the contract at the heart of all of these claims. And I go back to how did the plaintiffs actually try to prove their claims. When we look at their post-hearing brief, in both arbitrations, after full hearings on the merits, and look at the evidence they presented, what we see is not them separating out claims of parents and children. We see them trying these claims all together. Now this is exactly why we have Section 10 deferential review, though, because we don't want or need a district court to go back and try to unpack all that evidence and essentially act as a court of appeal for an arbitration. Instead, we reserve Section 10 vacatur only for those very extraordinary cases where there's actual manifest disregarded law, and that manifest disregard is clear from the record. We don't have either here. We don't have a situation where there's evidence that these arbitrators knew the applicable law and disregarded it, nor do we have any place where that's clear from the record. That's the situation where deferential review is appropriate. And I submit that that's the proper result here. If the court has further questions, I'm happy to address them. Apparently not. Thank you. Thank you. Thank you. May it please the court. I think that the parents issue is not as simple as my colleague suggested. I don't think that the parents were trying to enforce the contract, like the children in Townsend, excuse me. I think that the claims for the parents were pled factually in those paragraphs, but throughout the counts, plaintiffs were referred to generally. And so plaintiffs did allege independent duties. They did allege violations of duties beyond just those in the contract. And so I think that the underlying parents' claims are distinct and do not arise from the contract. And I think that that's an important point in the Townsend case and the other cases such as Montoya that look at third-party claims or non-sanctuary claims and how important they are. As it relates to the delegation issue, I think that the original briefing valve did not ask the district court to delegate the decision on arbitrability to the arbitrator. And I think that's significant to the point of whether we would have waived the argument by not making it in the arbitration. I think that's sort of where we agree with that concept. And I think that by not asking the district court to delegate authority on jurisdiction arbitrability to the arbitrator, I think the valve has waived that argument here. Did the parents agree to submit their dispute, their own claims to arbitration by participating in the arbitration? No, I don't think so. I think that once they were there, one of them was on behalf of a minor child, so she sort of had to be there on behalf of her child. And I think that was sort of where she was there. The other plaintiff had turned 18 by the time of the arbitration, so his mother actually did not give any testimony or anything else. I think once we're sent to arbitration, I think they were required to participate as part of the rules, but I don't think they waive their argument that they should not have been sent to arbitration in the first place by participating. I think that that, again, as Judge Ellison pointed out, that's sort of a heads-we-lose, tails-valve-win situation, where if we don't participate, then we've waived it, we've lost all of our substantive arguments, et cetera. If we do, then they say that we have agreed to the arbitration. So I think the parents, JP's mother testifying in the hearing on behalf of her son is more of a function of her having to be there because he's a minor, more than her participating in the process and agreeing that her claims are subject to arbitration. I do want to, I'm just going back through the complaint. This is the, there was no, there's not an amended complaint, right? There's just a first complaint that's at ER, sorry, 90 or 80, 89, is it? Yes, Your Honor, I believe that's correct. No, 97, sorry. In any event, it's interesting. I hadn't read it as carefully as, in light of the defendant's arguments here, but you don't distinguish as much as I had initially thought between the claims. I mean, for example, all of the claims are brought by all of the plaintiffs. So there's not separate tort claims versus separate contract claims, right? There are no contract claims from our perspective. There's no breach of contract claim. I think it's the tort claims. The world license. I'm sorry? Breach of the license, or what would you call it? Well, I mean, I think that the individual plaintiffs, the teenagers, have their own claims for negligence, for violation of consumer protection. The parents, the mothers who filed this complaint also have those same claims. But they're different theories, right? That they would each be covered by or not? Because I looked at the class definition, and you have both, you asked for one class that covers both the children and the parents together. It strikes me that if you were trying to bring separate theories, you would have split those up and asked for two different classes. Well, I think that as I stand here today, of course, I wish I would have done that based on those questions. But I do think that at the time, that the way that it was written, they were brought individually and on behalf of the minor children. And so I think that the class definition is always subject to change and always subject to review as the case proceeds. And I think that the language in the counts is broad enough to cover the theories for both the individual plaintiffs and for the individual parents. Are there breach of contract or enforcement of contract claims? I guess opposing counsel said you were attempting to enforce the contract or saying that VALV should enforce the contract against third parties. Are there breach of contract? Are they benefiting from enforcement of the contract? I don't think that the parents are required to prove that VALV should have enforced the contract against third parties. I think that VALV's conduct was broader than that. And I think the allegations of VALV's conduct were much more broad than just enforcement of the contract. So the consumer protection claims, sure, some of the conduct we may have talked about would have been something we could have said was a contractual obligation, but it's not an enforcement of a contract that underlies or is required for those claims. Well, as I read the contract now, it almost seems as if you included the parents to sue on behalf of their children. And I'd come in thinking the parents had separate claims. It's both. I'm sorry. I don't know that it's both. I mean, the complaint doesn't seem to be clear on that. If you look at the caption, if you look at the introduction of the individual plaintiffs, we tried to be clear that it was both individually and on behalf of their minor children. And I think that that's, to the extent that that's something that can be cleared up with an amended contract or amended complaint, we're more than happy to do so. But I think that sort of substantively, we put that in the complaint, and I think that that was sufficient. Okay. Unless there are any other questions, I see I'm over my time. We thank you for your argument. The case of GG versus VALV Corporation is submitted and we're adjourned for this session and for the week.
judges: Ikuta, R. Nelson, Oliver